O

# United States District Court
# Central District of California

| | |
|---|---|
| JORGE ARRAZOLA-GONZALEZ et al., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM et al., <br><br> Defendants. | Case № 5:25-cv-01789-ODW (DFMx) <br><br> **ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [8]** |

## I.    INTRODUCTION

Petitioners Jorge Arrazola-Gonzalez, and Oswaldo Gonzalez move the Court *ex parte* for a temporary restraining order ("TRO") requiring, among other things, their release from custody or an individualized bond hearing before an immigration judge. (TRO, ECF No. 8.)  Respondents filed an untimely opposition.[1]  For the reasons discussed below, the Court **GRANTS** the TRO.

---

[1] On August 12, 2025, Petitioners served the TRO Application on Respondents.  (TRO 21 (Certificate of Service).)  This Court's Rules provide that opposing papers to a noticed ex parte application "must be filed no later than 24 hours following service."  *See* Hon. Otis D. Wright, II Standing Order § VII.C., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii.  Accordingly, the Court declines to consider Respondents' untimely opposition. *See* C.D. Cal. L.R. 7-12.  Further, for the same reasons set forth in this Court's August 13, 2025, Order granting the ex parte application for TRO in *Javier Ceja Gonzalez et al. v. Kristi Noem et al.*, No. 5:25-cv-02054-ODW (ADSx), nothing in Respondents' untimely opposition would alter the disposition of the TRO.

## II. BACKGROUND

As part of a "widescale immigration enforcement action," immigration authorities apprehended Arrazola-Gonzalez in Los Angeles, California on June 7, 2025, and Gonzalez in Whittier, California on June 18, 2025. (First Am. Pet. ¶¶ 1–2, ECF No. 7.) Petitioners are currently detained at the Adelanto immigration detention center. (*Id.* ¶¶ 15–16.)

On July 11 and August 7, 2025, Petitioners were denied a bond redetermination hearing. (*Id.* ¶ 5.) The Immigration Judge ("IJ") held that he lacked jurisdiction over Petitioners' bond hearing because, based on a new agency policy, "all persons who entered without inspection are deemed applicants for admission to the United States and are ineligible for bond redetermination hearings" under 8 U.S.C. § 1225(b)(2)(A). (*Id.*) Petitioners allege that the new agency policy "turns . . . well-established understanding on its heads and violates the statutory scheme." (*Id.* ¶ 29.)

On August 11, 2025, Petitioners filed a First Amended Petition for Writ of Habeas Corpus on the grounds that their detention violates 8 U.S.C. § 1226(a); the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and their Fifth Amendment Right to Due Process. (*Id.* ¶¶ 52–61.) On August 12, 2025, Petitioners filed and served the instant application for TRO. (TRO.) Petitioners request that this Court (1) enjoin Respondents from continuing to detain Petitioners without providing them with individualized bond hearings before an IJ, (2) enjoin Respondents from relocating Petitioners outside of the Central District of California pending resolution of this matter, and (3) order Respondents to show cause why a preliminary injunction should not issue. (*Id.* at 2, 19.)

## III. LEGAL STANDARD

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush &*

*Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b).  To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

## IV.     DISCUSSION

Petitioners contend that each *Winter* factor weighs in favor of a TRO. (TRO 4–13.)  The Court addresses each *Winter* factor in turn.

### A.    Likelihood of Success on the Merits

Petitioners argue that the statutory text supports their position that § 1226(a), not § 1225(b)(2), governs their detention.  (TRO 4–9.)

First, Petitioners point to the plain text of § 1226(a) and assert that it applies to inadmissible noncitizens like Petitioners.  Section 1226(a) provides that,

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on
>
> > (A) bond of at least $1,500 with security approved by, and

>containing conditions prescribed by, the Attorney General; or
>
>(B) conditional parole . . . .

This section "applies to aliens already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Except for criminal aliens covered under subsection (c), § 1226(a)(2) permits detained aliens to be released on bond or conditional parole. Under subsection (c)(1)(E), aliens present in the United States without admission or parole *and* charged with, arrested for, convicted of, or admitted to convicting certain criminal offenses are subject to mandatory detention. Based on the language of subsection (c)(1)(E), Congress appears to carve out an exception for those aliens present in the United States *without* criminal offenses to still be considered under subsection (a)(2). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Accordingly, the statutory text supports Petitioner's argument that § 1226(a) applies to their detention.

Second, Petitioners contend that the plain text of § 1225(b)(2) demonstrates that being an "applicant for admission," alone, "is not sufficient to render someone subject to mandatory detention," and the "'applicant for admission' must *also* be 'seeking admission.'" (TRO 9.) The Supreme Court noted in *Jennings* that "§ 1225(b) applies primarily to aliens seeking entry into the United Sates." 583 U.S. at 297. Looking to the statutory language, § 1225(b) applies to "Inspection of applicants for admission" and § 1225(b)(1) concerns the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Section 1225(b)(2)(A) applies to "Inspection of other aliens" not covered under § 1225(b)(1), and provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." Section 1225(b)(2)(B)–(C) also refers to various methods of entry, such as an alien arriving on land or arriving as "a crewman" or "a

stowaway." Furthermore, the terms "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101. Based on this language, Petitioners argue that § 1225(b) applies to those "seeking admission," meaning those who take "affirmative acts, like submitting an 'application for admission'" or subject to inspection at a border or upon arrival before an immigration officer. (TRO 7–8.) To ignore the "seeking admission" language, Petitioners argue, would render the language purposeless and violate a key rule of statutory construction. (*Id.* at 8.) Based on the foregoing arguments, Petitioners show a likelihood of success on the merits.

**B.     Likelihood of Irreparable Harm**

Petitioners contend that they will suffer irreparable harm in the absence of a TRO as they will continue to be detained without a bond hearing. (TRO 12.) Petitioners also argue that an appeal to the Board of Immigration Appeals ("BIA") would be futile and would force them "to endure the very harm they are seeking to avoid," because the BIA has adopted the new agency policy in a recent unpublished BIA decision. (*Id.* at 13–14.) "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). As the BIA's interpretation of the statutory language is being challenged in this instance, Petitioners' assertion that an appeal would be futile is persuasive. Accordingly, the Court exercises its discretion to waive exhaustion of administrative remedies and finds that Petitioners demonstrate that continued detention without a bond hearing is likely to result in irreparable injury.

**C.     Balance of Equities and Public Interest**

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioners contend that a TRO is in the public interest because they challenge the new agency policy for violating federal laws and Respondents cannot be harmed by being required to end an unlawful practice. (TRO 12–13.) The dispute here turns on whether the new agency policy

violates federal law, specifically by forcing Petitioners' detention without bond. "It is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the last two *Winter* factors weigh in favor of an injunction.

## V. CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (ECF No. 8.) It is hereby **ORDERED** that:

- Respondents shall provide each Petitioner with an individualized bond redetermination hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order;
- Respondents are enjoined from relocating Petitioners outside of the Central District of California pending final resolution of this case; and
- Respondents shall show cause in writing by no later than **August 20, 2025**, as to why the Court should not issue a preliminary injunction in this case. Petitioners may file a reply by **August 22, 2025**. The Court **SETS** a hearing on the preliminary injunction on **August 26, 2025, at 11:30 a.m.**, via Zoom.

**IT IS SO ORDERED.**

August 15, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**